UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| 3M COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>UGLY JUICE, LLC DBA GOOD USE, et al.,<br><br>    Defendants. | Case No. 5:21-cv-02338-EJD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 10 |

Plaintiff 3M Company (3M) brings this action against Defendants Ugly Juice, LLC dba Good Use, RDGIV Holdings LLC, Grant Carlson, Slava Chupryna, Sabrina Corpus, and Ralph Dewar Gaines (collectively, "Defendants") for violations of the Lanham Act including trademark counterfeiting, trademark infringement, unfair competition, false endorsement, false designation of origin, trademark dilution, as well as other California statutory and common law violations.  3M's claims arise from Defendants' alleged ongoing misconduct and use of 3M's name and "3M" trademarks to perpetrate false and deceptive offers for sale and sales of counterfeit personal protective equipment ("PPE") to customers, during the COVID-19 pandemic—without authorization and for inappropriate commercial benefit.  Complaint ("Compl."), Dkt. No. 1 ¶ 1. 3M now seeks a temporary restraining order and preliminary injunction to halt Defendants, and their agents from selling or offering to sell counterfeit 3M-brand N95 respirators.  For the reasons below, the Court will grant the temporary restraining order.

I. **BACKGROUND**

3M is a Delaware corporation that manufactures healthcare and safety products for

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1

industries and consumers worldwide.  Compl. ¶ 27.  As a result of the COVID-19 pandemic, a high demand exists for 3M's N95 respirator products (N95 masks).  To keep them safe while working to mitigate the effects of the pandemic, first responders, healthcare professionals, and other frontline workers depend on 3M's N95 masks.  *Id.* ¶ 37.  In order to meet the rising demand for N95 masks, 3M has increased its annual production of N95 masks to approximately 2 billion.  *Id.*

As demand for PPE and in particular N95 masks has increased however, 3M has seen individuals and companies trying to exploit the situation.  *Id.* ¶ 41.  To help protect the public and healthcare professionals on the front lines of the COVID-19 pandemic from counterfeiting, misleading and substantially inferior PPE products, to help reduce time and money wasted by government and other procurement officials on scams, and to protect 3M's goodwill and reputation in its 3M brand, 3M has worked with law enforcement authorities, online e-commerce retailers, and others to combat unethical and unlawful business practices related to 3M-brand N95 masks.  *Id.* ¶ 42.  3M's efforts are seen on its website, which lists the single case price for the most common models of its 3M-brand N95 masks so that the public can identify and avoid inflated pricing.  *Id.* ¶ 43.  In addition, customers of 3M can help identify and report fraud and counterfeiting on its website, which provides several identifiers of counterfeit goods as well as lot numbers known to be associated with counterfeit goods.  *Id.*

3M commenced this trademark-infringement action against Defendants on March 31, 2021.  3M's complaint alleges that the Defendants are using 3M's registered trademarks to advertise and sell counterfeit 3M-branded N95 masks.  Most notably, 3M alleges that in August 2020, Defendants contacted a Salt Lake City, Utah based elder care group to sell counterfeit 3M Model 1860 and 1860S N95 masks.  *Id.* ¶ 45.  In October 2020, the elder care group purchased over 37,000 3M Model 1860 N95 masks for $155,874.00, which were shipped to their facilities.  *Id.* ¶ 46.  In February 2021, the elder care group realized that the N95 masks it purchased were not like others that they had previously purchased and contacted 3M's COVID-19 Fraud Response

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

Team. *Id*. ¶ 47. The elder care group provided photos of the products that they purchased, which 3M alleges exhibited signs of counterfeiting as described on 3M's website. *Id*. ¶ 48. Specifically, 3M states that the lot numbers (B20522 and B20018) on the masks are known-counterfeit lot numbers and the packaging was inauthentic. *Id*. ¶ 49; *see also* Declaration of Christine McCool ("McCool Decl."), Dkt. No. 10-1 ¶ 14; Exs. 4 and 6. Defendants also charged the elder care group more than three times the single case list price for these counterfeit products. Compl. ¶ 50; McCool Decl. ¶ 13.

In December 2020, Defendants also sold thousands of counterfeit 3M-brand N95 masks to a New York hospital. Compl. ¶ 51. The hospital spent $11,741.80 for the counterfeit 3M Model 1860 and 1860S N95 masks. *Id*. After suspecting the 3M-brand N95 masks they had received were inauthentic, the hospital contacted 3M and provided photographic evidence that 3M alleges demonstrated the hospital had received counterfeit goods from Defendants. *Id*. ¶¶ 52-53. Specifically, they exhibited several indicia of fraud described on 3M's website, including the inclusion of known counterfeit lot numbers and inauthentic packaging. *Id*. ¶ 54.

Further, Defendants attempted to sell hundreds of thousands of counterfeit 3M-brand N95 masks to a Seattle, Washington based health care system. *Id*. ¶ 55; McCool Decl. ¶ 17. Defendants informed the healthcare system that their fulfillment partner on these products was CovCare, Inc. ("CovCare") and that CovCare was an approved 3M distributor. *Id*. 3M asserts that CovCare is not an approved distributor and instead, is a Staten Island, New York based company that sells counterfeit 3M-brand N95 masks. Compl. ¶ 56. 3M alleges that Defendants contacted at least five other hospitals and health care systems located across the country, offering to sell hundreds of thousands of counterfeit 3M-brand N95 masks. *Id*. ¶¶ 58, 61. The hospitals and health care systems each contacted 3M and reported counterfeiting and fraud concerns after the Defendants offered a "proof of life" video, to demonstrate the authenticity and availability of the 3M-brand N95 masks. *Id*. ¶¶ 60-62.

3M brings nine claims for relief, including five federal claims under the Lanham Act.

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

3

1  3M's first and second claims allege that Defendants are engaging in trademark counterfeiting and

2  infringement, in violation of 15 U.S.C. § 1114(1), by using spurious designations on its products

3  that are identical to 3M's federally registered trademarks.  3M's third claim alleges that the

4  Defendants are engaging in unfair competition and false designation of origin, in violation of 15

5  U.S.C. § 1125(a)(1)(A), by creating the false impression that the products they purposed to offer

6  originate from, and/or are sponsored or approved by, and/or offered with authorization from 3M.

7  3M's fourth claim alleges that Defendants are engaging in trademark dilution, in violation of 15

8  U.S.C. § 1125(c), by using 3M's trademarks in the sale of counterfeit products.  3M's fifth claim

9  alleges that Defendants are engaging in false advertising, in violation of 15 U.S.C. §

10 1125(a)(1)(B), by making statements to the general public and medical health professionals that

11 contain false, misleading, and/or deceptive statements about the nature and quality of the products

12 Defendants have for sale.  3M's remaining four claims allege violations of California's trademark

13 law and business and professional code.

14 On April 19, 2021, 3M filed the pending motion requesting the Court issue a temporary

15 restraining order, an order to show cause why a preliminary injunction should not issue, and for

16 the opportunity to conduct limited expedited discovery in advance of the hearing on the

17 preliminary injunction.  Motion for Temporary Restraining Order and Preliminary Injunction

18 ("Mot."), Dkt. No. 10.  3M seeks to enjoin the Defendants from selling or offering to sell

19 counterfeit 3M-brand N95 masks.

### II. LEGAL STANDARD

The Court applies a familiar four-factor test on both a motion for a temporary restraining order and a motion for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th

Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Assuming that this threshold has been met, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

### III.   ANALYSIS

Having reviewed 3M's motion, the Court finds that 3M has shown a likelihood of success on the merits of its trademark related claims, and that it will suffer irreparable harm unless Defendants' violations are enjoined. The Court also finds that a temporary restraining order is necessary to prevent immediate and irreparable injury to 3M before the hearing on the order to show cause regarding the preliminary injunction can take place, and to preserve the status quo. The Court further finds that the balance of equity and interests of justice support granting such relief.[1] Accordingly, this Court enters the following orders:

**TEMPORARY RESTRAINING ORDER**

IT IS HEREBY ORDERED that Defendants, as well as their agents, representatives,

---

[1] As of the date and time of entry of this order, no defendant has filed an opposition to the pending motion or otherwise attempted to communicate with the Court directly. The Court finds that 3M has made reasonable attempts to provide Defendants notice of its motion for a temporary restraining order and this Court's April 22, 2021 status conference. 3M indicates that all relevant documents (summons and complaint, initial case management order, and notice of motion for temporary restraining order and preliminary injunction) were served on defendants RDGIV Holdings LLC and Ralph Dewar Gaines and on the Ugly Juice defendants (Ugly Juice, Grant Carlson, Slava Chupryna, and Sabrina Corpus). *See* Declaration of Douglass Smurr, Dkt. No. 10-2. The Court also notes that 3M has been diligent in attempting to determine whether Defendants have retained counsel and whether Defendants would stipulate to a resolution of 3M's motion. *See id*; *see also* Supplemental Declaration of Douglass Smurr, Dkt. No. 14.

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

5

employees, assigns, and all persons acting in concert or privity with them, are immediately temporarily restrained from:

1. Maintaining, disseminating, reproducing, promoting, distributing, advertising, or otherwise using any of the 3M Marks, or any mark confusingly similar thereto;
2. Using any of the 3M Marks, or any mark confusingly similar thereto, as all or part of any mark, product configuration, or design;
3. Concealing, destroying, transferring, selling, donating, or otherwise disposing of any evidence of Defendants' manufacture, marketing, sale, or receipt of things related to Defendants' sale of counterfeit 3M-brand products bearing the 3M Marks
4. Using the 3M Marks and any other word, name, symbol, device, or combination thereof that is confusingly similar to the 3M Marks, for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any good or services, including, without limitation, Plaintiff's 3M-brand N95 masks; and
5. Engaging in any false, misleading, and/or deceptive conduct in connection with 3M and its products, including, without limitation, representing itself as being an authorized distributor, vendor, agent, representative, retailer, and/or licensee of 3M and/or any of 3M's products, including, without limitation, 3M-brand N95 masks.

## EXPEDITED DISCOVERY ORDER

IT IS HEREBY ORDERED that Defendants, as well as their agents, representatives, employees, assigns, and all persons acting in concert or privity with them, are required to comply with the following limited expedited discovery in advance of the hearing on the preliminary injunction by:

1. Allowing and cooperating with 3M's inspections of all warehouses and storage sites where Defendants may store counterfeit 3M-brand N95 masks; and
2. Producing to 3M all records, including but not limited to emails, texts, social media

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

6

posts, videos, invoices, memoranda, and other documents related to their purchase, marketing, and sale of purported 3M-brand N95 masks.

**ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

IT IS ORDERED that Defendants shall show cause, unless Defendants waive the right to do so, before the Honorable Edward J. Davila at 9:00 a.m. on May 13, 2021, why a preliminary injunction should not issue restraining and enjoining Defendants, as well as their agents, representatives, employees, assigns, and all persons acting in concert or privity with them, from selling or offering to sell 3M-brand N95 respirators as more specifically set forth herein, pending the final disposition of this action.  Unless the parties stipulate to an alternate briefing schedule, including an extension of the temporary restraining order, the schedule on 3M's motion for a preliminary injunction will be as follows.  Defendants' opposition to the motion for preliminary injunction is due May 4, 2021 by the close of business.  3M may file a reply no later than May 7, 2021 by the close of business.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a district court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The district court retains discretion "as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted) (emphasis in original).  In this case, the Court dispenses with the bond requirement but may revisit the issue should the circumstances so require.

3M shall be responsible for serving this Order on all Defendants.

**IT IS SO ORDERED.**

Dated: April 23, 2021

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
7