UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| 3M COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>UGLY JUICE, LLC DBA GOOD USE, et al.,<br><br>    Defendants. | Case No. 5:21-cv-02338-EJD<br><br>**ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 10 |

On March 31, 2021, Plaintiff 3M Company ("3M") filed this action against Defendants Ugly Juice, LLC dba Good Use, RDGIV Holdings LLC, Grant Carlson, Slava Chupryna, Sabrina Corpus, and Ralph Dewar Gaines (collectively, "Defendants"), alleging violations of the Lanham Act including trademark counterfeiting, trademark infringement, unfair competition and false designation of origin, trademark dilution, false advertising, as well as other California statutory and common law violations. On April 19, 2021, 3M filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"), Dkt. No. 10, against Defendants. Specifically, 3M requested that this Court grant an order restraining and enjoining Defendants, as well as their agents, representatives, employees, assigns, and all persons acting in concert or privity with them from:

    (i)    Maintaining, disseminating, reproducing, promoting, distributing, advertising, or otherwise using any of the 3M Marks, or any mark confusingly similar thereto;

    (ii)    Using any of the 3M Marks, or any mark confusingly similar thereto, as all or part of any mark, product configuration, or design;

    (iii)    Concealing, destroying, transferring, selling, donating, or otherwise disposing of any evidence of Defendants' manufacture, marketing, sale, or receipt of things related to Defendants' sale of counterfeit 3M-brand products bearing the 3M

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
1

|     |       |                                                                                     |
| --- | ----- | ----------------------------------------------------------------------------------- |
| 1   |       | Marks;                                                                              |
| 2   | (iv)  | Using the 3M Marks and any other word, name, symbol, device, or combination         |

(iv) Using the 3M Marks and any other word, name, symbol, device, or combination thereof that is confusingly similar to the 3M Marks, for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any good or services, including, without limitation, Plaintiff's 3M-brand N95 masks; and

(v) Engaging in any false, misleading, and/or deceptive conduct in connection with 3M and its products, including, without limitation, representing itself as being an authorized distributor, vendor, agent, representative, retailer, and/or licensee of 3M and/or any of 3M's products, including, without limitation, 3M-brand N95 masks.

*See* Dkt. No. 10-3. 3M also requested a date certain for a hearing on an Order to Show Cause why a preliminary injunction should not issue. *See* Mot., Notice of Motion. The Court issued an Order granting the temporary restraining order until the Order to Show Cause Hearing, which was scheduled for May 13, 2021.[1] Order Granting Plaintiff's Motion for Temporary Restraining Order and for Order to Show Cause ("Order"), Dkt. No. 19. In the Order to Show Cause, the Court ordered 3M to serve the Order on Defendants. *See* Order at 7. 3M duly served Defendants with the Order on April 28 and 29, 2021. Dkt. No. 23. The Court also ordered Defendants to file their oppositions to 3M's Motion by May 4, 2021. *See* Order at 7. The Court ordered 3M to file its reply papers by May 7, 2021. Defendants did not oppose 3M's Motion.

Having considered 3M's Motion and supporting documents, as well as the record and proceedings to date, the Court hereby GRANTS 3M's request for a preliminary injunction for the reasons set forth below.

---

[1] Before issuing its Order, the Court also held a conference on the Motion on April 28, 2021. No Defendant made an appearance at the conference after 3M served all relevant documents (summons and complaint, initial case management order, and notice of motion for temporary restraining order and preliminary injunction) on defendants RDGIV Holdings LLC and Ralph Dewar Gaines and on the Ugly Juice defendants (Ugly Juice, Grant Carlson, Slava Chupryna, and Sabrina Corpus). *See* Declaration of Douglass Smurr, Dkt. No. 10-2.

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
2

## I. BACKGROUND

### A. Factual Background

3M is a Delaware corporation that manufactures healthcare and safety products for industries and consumers worldwide. Complaint ("Compl."), Dkt. No. 1 ¶ 27; *see also* Declaration of Christine McCool ("McCool Decl."), Dkt. No. 10-1 ¶ 3. Specifically, 3M has been a leading manufacturer of respirator products (N95 masks), and has sold N95 masks in the United States under the 3M-brand name for decades. McCool Decl. ¶ 3. 3M has invested hundreds of millions of dollars in advertising, promoting, offering for sale, and selling its goods and services under its standard-character mark "3M" and 3M design mark (together, the "3M Marks"). *Id*. ¶ 4. To protect its rights over the 3M Marks, 3M has obtained many federal trademark registrations for these marks, including: (i) Trademark Reg. No. 3,398,329, which covers the standard-character 3M Mark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration"); (ii) Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shield, and respiratory masks for medical purposes" (the "'036 Registration"); and (iii) Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, an 10 for, *inter alia*, respirators (the "'534 Registration"). *See id.* at ¶ 5, Exs. 1-3.

As a result of the COVID-19 pandemic, a high demand exists for 3M's N95 masks. To keep them safe while working to mitigate the effects of the pandemic, first responders, healthcare professionals, and other frontline workers depend on 3M's N95 masks. Compl. ¶ 37. As a result of rising demand for N95 masks, 3M has increased its annual production of N95 masks to approximately two billion. *Id*.

As demand for personal protective equipment and N95 masks has increased, however, the country has seen individuals and companies trying to exploit the situation. *Id*. ¶ 41; McCool Decl. ¶ 8. To help protect the public and healthcare professionals on the front lines of the COVID-19 pandemic from counterfeiting, misleading and substantially inferior PPE products, to help reduce time and money wasted by government and other procurement officials on scams, and to protect 3M's goodwill and reputation in its 3M-brand, 3M has worked with law enforcement authorities,

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION

3

online e-commerce retailers, and others to combat unethical and unlawful business practices related to 3M-brand N95 masks. McCool Decl. ¶ 8-10. 3M's efforts are seen on its website, which lists the single case price for the most common models of its 3M-brand N95 masks so that the public can identify and avoid inflated pricing. Compl. ¶ 43. In addition, customers of 3M can help identify and report fraud and counterfeiting on its website, which provides several identifiers of counterfeit goods as well as lot numbers known to be associated with counterfeit goods. *Id.*

Still, despite all its efforts, 3M alleges that the Defendants in this case are using 3M's registered trademarks to advertise and sell counterfeit 3M-branded N95 masks. Defendants are not, and never have been, authorized distributors, vendors, or representatives of 3M products. McCool Decl. ¶ 12, 23. Yet, in August 2020, Defendants contacted a Salt Lake City, Utah based elder care group to sell counterfeit 3M Model 1860 and 1860S N95 masks. *Id.* ¶ 45. In October 2020, the elder care group purchased over 37,000 3M Model 1860 N95 masks for $155,874.00, which were shipped to their facilities. *Id.* ¶ 46; McCool Decl. ¶¶ 13-14, Ex. 5. In February 2021, the elder care group realized that the N95 masks it purchased were not like others that they had previously purchased and contacted 3M's COVID-19 Fraud Response Team. McCool Decl. ¶ 13. The elder care group provided photos of the products that they purchased, which 3M alleges exhibited signs of counterfeiting as described on 3M's website. *Id.* ¶ 14, Ex. 4. Specifically, 3M states that the lot numbers (B20522 and B20018) on the masks are known-counterfeit lot numbers and the packaging was inauthentic. *Id.*, Exs. 4 and 6. Defendants also charged the elder care group more than three times the single case list price for these counterfeit products. *Id.* ¶ 13.

In December 2020, Defendants sold thousands of counterfeit 3M-brand N95 masks to a New York hospital. McCool Decl., Ex. 7. The hospital spent $11,741.80 for the counterfeit 3M Model 1860 and 1860S N95 masks. *Id.* ¶¶ 15-16. After suspecting the 3M-brand N95 masks were inauthentic, the hospital contacted 3M and provided photographic evidence that 3M alleges demonstrated the hospital had received counterfeit goods from Defendants. *Id.* The supposed N95 masks exhibited several indicia of fraud described on 3M's website, including the inclusion of known counterfeit lot numbers and inauthentic packaging. *Id.*, Exs. 4 and 8.

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
4

Further, Defendants attempted to sell hundreds of thousands of counterfeit 3M-brand N95 masks to a Seattle, Washington based health care system. McCool Decl. ¶ 17. Defendants informed the healthcare system that their fulfillment partner on these products was CovCare, Inc. ("CovCare") and that CovCare was an approved 3M distributor. *Id*. 3M asserts that CovCare is not an approved distributor and instead, is a Staten Island, New York based company that sells counterfeit 3M-brand N95 masks. *Id*. ¶ 18. Defendants contacted at least five other hospitals and health care systems located across the country, offering to sell hundreds of thousands of counterfeit 3M-brand N95 masks. *Id*. ¶¶ 20-21. The hospitals and health care systems each contacted 3M and reported counterfeiting and fraud concerns after the Defendants offered a "proof of life" video, to demonstrate the authenticity and availability of the 3M-brand N95 masks. McCool Decl. ¶ 22, Exs. 4 and 9.

Because 3M did not manufacture these counterfeit products, 3M asserts that their efficacy is unknown. *Id*. ¶ 24.

### B. Procedural History

3M filed its Complaint on March 31, 2021. Dkt. No. 1. On April 19, 2021, 3M filed the instant Motion. Dkt. No. 10. The Court held a conference on the Motion on April 22, 2021, Dkt. No. 18, and granted the Motion on April 23, 2021, issuing a temporary restraining order with the terms set forth above and reserving decision on the Motion insofar as it sought a preliminary injunction, *see* Dkt. No. 19. On May 13, 2021, the Court held a hearing on 3M's request for preliminary injunction.[2]

### II. LEGAL STANDARD

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

---

[2] Defendants Ugly Juice, Grant Carlson, Slava Chupryna, and Sabrina Corpus failed to appear at the May 13, 2021 hearing. Defendants RDGIV Holdings LLC and Ralph Dewar Gaines did make an appearance. 3M and Defendants Gaines and RDGIV Holdings LLC informed the Court that they are working on a resolution of the matter as to claims asserted against Defendant Gaines and RDGIV Holdings LLC.

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
5

balance of equities tips in his favor, and that an injunction is in the public interest.'" *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008)). The Ninth Circuit has held that

> the "serious questions" approach survives *Winter* when applied as part of the four-element *Winter* test. In other words, "serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met.

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

As to the other two elements of the *Winter* test, the element of irreparable harm is particularly important. As made clear by Supreme Court case law, the mere possibility of irreparable harm is not sufficient; irreparable harm must be likely. *See Winter*, 555 U.S. at 22 (stating that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

Moreover, although neither the Supreme Court nor the Ninth Circuit has made an express holding on this point, irreparable harm in a trademark case should not be presumed simply because the mark holder has established a likelihood of success on the merits. The Supreme Court has rejected such a presumption in the patent context, *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006), and the Ninth Circuit has extended that holding in *eBay* to the copyright context. *See Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 995–96 (9th Cir.2011) (explaining that *eBay* cannot be narrowly read to apply in the patent context only). There does not seem to be any reason why that presumption should still apply in the trademark context. *See BomerangeIt, Inc. v. ID Armor, Inc.*, No. 5:12–CV–0920 EJD, 2012 WL 2368466, at *4 (N.D. Cal. June 21, 2012) (in a trademark case, noting that "[d]istrict courts in this Circuit that have addressed this issue have found that the governing law has changed, and a plaintiff is not granted the presumption of irreparable harm upon a showing of

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
6

likelihood of success on the merits").

## III. DISCUSSION

### A. 3M Has Shown a Likelihood of Success on the Merits

3M alleges, *inter alia*, claims of trademark counterfeiting; trademark infringement; unfair competition and false designation of origin; trademark dilution; and false advertising as governed by the Lanham Act, 15 U.S.C. §§ 1114(1), 1116(a), and 1125(a)(1)(A). *See* Compl. ¶¶ 65-155.

#### i. Trademark Counterfeiting and Infringement

3M's first two claims are for federal trademark counterfeiting and federal trademark infringement, in violation of section 32 of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and (b). "To prevail on its trademark infringement claim, [3M] must show that: (1) it has a valid, protectable trademark, and (2) that [Defendants'] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). In determining whether 3M has shown a likelihood of success on the merits, the Court must analyze whether 3M has shown that it meets these elements.

3M has provided evidence that it is the owner of the federally registered 3M Marks. *See* McCool Decl. ¶¶ 3-5. Exs. 1-3. Federal registration of a trademark constitutes prima facie evidence of the validity of the registered mark. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). In the absence of any evidence that the 3M Marks are not valid, the Court finds this element satisfied for purposes of this analysis.

"The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (footnote omitted).

Assessing the likelihood of confusion normally involves an eight-factor test. However, the Court need not perform the full eight-factor analysis in cases involving counterfeit marks, because

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
7

these are inherently confusing. *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004); *Nestle USA, Inc. v. Gunther Grant, Inc.*, No. CV-13-6754 MMM (ASX), 2014 WL 12558008, at *8 (C.D. Cal. May 13, 2014); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003). A counterfeit mark is: "(1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946 (9th Cir. 2011). Here, 3M has shown that Defendants have incorporated 3M's Marks into the N95 masks they offered to sell. Defendants used the marks for the same goods their '329, '036, and '534 Registrations cover. Moreover, at least two health-care facilities were unsure of the origin of the counterfeit products sold by Defendants. *See* McCool Decl. ¶¶ 13-22. As such, 3M has shown that Defendants used counterfeit marks. As the Ninth Circuit has explained, when virtually identical marks are "used with identical products or services[,] likelihood of confusion . . . follow[s] as a matter of course." *Brookfield Communications, Inc.*, 174 F.3d at 1056. Therefore, the Court finds that Defendants' use of the marks was likely to confuse consumers about the source of the products. Because 3M has shown both that they were valid trademarks and Defendants' use of the marks is likely to confuse consumers, the Court finds that 3M has shown it is likely to succeed on the merits of its federal trademark infringement and federal trademark counterfeiting claims.

### ii. Federal Unfair Competition and False Designation of Origin

3M's third claim is for unfair competition and federal false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). To be liable for trademark infringement under § 1125(a), a person must (1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). "Whereas section 32 provides protection only to registered marks, section 43(a) protects against infringement of unregistered marks and trade dress as well as registered marks and protects against a wider range of practices

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
8

such as false advertising and product disparagement." *Brookfield Communications, Inc.*, 174 F.3d at 1046 n.8 (internal citations omitted) (citing *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir. 1998); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)).

"Trade-mark and trade name infringement, or unfair competition, preclude one from using another's distinctive mark or name if it will cause a likelihood of confusion or deception as to the origin of the goods." *New W. Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979). "Whether we call the violation infringement, unfair competition[,] or false designation of origin, the test is identical[:] is there a 'likelihood of confusion?'" *Id*. The Court finds that 3M has shown a likelihood of confusion resulting from Defendants' use of 3M's Marks to give the impression that N95 masks they offered to customers originated from or were offered with authorization from 3M. As discussed above, there were at least two health-care facilities who were confused by Defendants' use and purchased products from Defendants under the mistaken belief that they were buying from 3M or an authorized 3M vendor. *See* McCool Decl. ¶¶ 13-22; *see also Network Automation, Inc.*, 638 F.3d at 1151 ("A showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion.") (quoting *Playboy Enterprises, Inc. v. Netscape Commc'ns. Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004)). Thus, the Court also finds that 3M is likely to succeed on the merits of its third claim for relief.

### iii.   Federal Trademark Dilution

3M's fourth claim is for federal trademark dilution, in violation of 15 U.S.C. § 1125(c). A plaintiff seeking relief under the federal anti-dilution law must show (1) that its mark is famous and distinctive, (2) that defendant began using its mark in commerce (3) after plaintiff's mark became famous and distinctive, and (4) that defendant's mark is likely to dilute plaintiff's mark." *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010).

A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C.

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
9

§ 1125(c)(2)(A). In determining whether this standard is met, courts may consider factors including (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) "[t]he extent of actual recognition of the mark"; and (4) whether the mark is registered. Here, 3M has submitted evidence that over the past century, 3M has invested hundreds of millions of dollars in advertising, promoting, and selling its products under its 3M Marks. McCool Decl. ¶ 4. 3M's products offered under its 3M Marks have been the subject of widespread, unsolicited media coverage and critical acclaim which has also led to commercial success, with annual revenues in the billions of dollars. *Id*. Because Defendants sale of counterfeit products is also likely to dilute 3M's Marks, the Court finds that 3M has shown a likelihood of success on its claim for federal trademark dilution.

### iv. Federal False Advertising

3M is also likely to succeed on the merits of its claim for false advertising under section 43(a)(1)(B) of the Lanham Act. The elements of a Lanham Act false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

As discussed above, Defendants are likely to, and in fact did, deceive reasonable consumers into believing that Defendants were authorized vendors and distributors of 3M products and/or had an association with 3M. *See* McCool Decl. ¶¶ 13-22. Accordingly, the Court also finds that 3M is likely to succeed on its claim under section 43(a)(1)(B) of the Lanham Act for false advertising.

### v. Common Law Trademark Infringement and Unfair Business Practices

1       3M also brings claims alleging California common law trademark infringement and
2   California unfair competition claims. The Ninth Circuit "has consistently held that state common
3   law claims of unfair competition and actions pursuant to California Business and Professions Code
4   § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News*
5   *Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (quoting *Acad. of Motion Picture Arts & Sciences v.*
6   *Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991)); *see also Jada Toys, Inc. v.*
7   *Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (California state law trademark infringement
8   claims "are subject to the same test" as federal claims under the Lanham Act). "The 'ultimate test'
9   for unfair competition is exactly the same as for trademark infringement: 'whether the public is
10  likely to be deceived or confused by the similarity of the marks.'" *Century 21 Real Est. Corp. v.*
11  *Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (quoting *New West Corp.*, 595 F.2d at 1201).
12  Therefore, the Court also finds that 3M is likely to succeed on the merits of its California common
13  law trademark infringement and California unfair competition claims.

### B.   3M Will Suffer Irreparable Harm Absent a Preliminary Injunction

15       3M must also "demonstrate that irreparable injury is likely in the absence of an
16  injunction." *Winter*, 555 U.S. at 22. "Irreparable harm is traditionally defined as harm for which
17  there is no adequate legal remedy." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068
18  (9th Cir. 2014). As discussed above, although the Ninth Circuit used to apply a presumption of
19  irreparable harm when a plaintiff had demonstrated a likelihood of success on the merits in
20  trademark infringement cases, the Circuit now holds that a finding of irreparable harm must be
21  grounded in actual, concrete evidence. *See Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt.*, 736
22  F.3d 1239, 1250 (9th Cir. 2013).

23       Here, accepting that the N95 masks flagged as counterfeit were indeed counterfeit—which
24  is the only conclusion that the current factual record permits—3M has made a strong showing of
25  irreparable harm. 3M has established that the 3M Marks are recognized and well-known in
26  households throughout the United States and that 3M has spent hundreds of millions of dollars in
27  advertising, marketing, and promotion of its goods and services under the 3M Marks. *See* McCool

Decl. ¶ 4. Defendants' conduct imperils 3M's well-established brand and reputation in at least two aspects.

First, 3M cannot control whether the products that Defendants are offering and selling adhere to 3M's quality-control standards. *See id*. ¶ 24; *see also 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 192 (S.D.N.Y. 2020) (finding the same variety of irreparable harm with respect to other counterfeit 3M-branded products). This is irreparable harm that cannot be compensated for with monetary relief because "one of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) (quoting *El Greco Leather Prod. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986)).

Second, Defendants' conduct threatens 3M with a loss of goodwill and control over its reputation. Since the start of the COVID-19 pandemic, the public has become familiar with 3M as a leading manufacturer of N95 masks. McCool Decl. ¶¶ 7-8. 3M stands to lose that goodwill should the public purchase 3M-branded products from Defendants that, because they are not in fact real 3M products, do not come with the efficacy assurances associated with 3M. *Id*. ¶ 24. The prospective loss of goodwill and control over its reputation constitutes a second form of irreparable harm. *See Herb Reed Enterprises, LLC*, 736 F.3d at 1250; *see also 3M Company*, 458 F. Supp. 3d at 192 (finding that, in the absence of an injunction, 3M would suffer irreparable harm if "its carefully curated brand and reputation [were] left to the devices of Defendant's scheme to profit from a pandemic").

Accordingly, the Court finds that 3M has made a strong showing of irreparable harm absent injunctive relief.

### C.     The Balance of Hardships Tips Decidedly in 3M's Favor

A court considering injunctive relief must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
12

1  (1987). In order to obtain injunctive relief, 3M must establish "that the balance of equities tips in

2  [its] favor." *Winter*, 555 U.S. at 20.

3  Here, it would not be a "hardship" for Defendants to refrain from engaging in unlawful

4  activities related to 3M's brand and Marks. This is in sharp contrast to the substantial hardship

5  3M would suffer in the absence of injunctive relief. As discussed above, Defendants' unlawful

6  conduct is likely to irreparably harm the 3M-brand and 3M Marks. The Court finds the balance of

7  hardships tips in 3M's favor and 3M has thus satisfied the third requirement for a preliminary

8  injunction.

### D.   A Preliminary Injunction Would Serve the Public Interest

Finally, 3M must establish that public interest considerations support issuance of preliminary injunctive relief. *See Winter*, 555 U.S. at 20. "In trademark cases, this factor is often addressed in terms of the public's right 'not to be deceived or confused.'" *Moroccanoil, Inc. v. Moroccan Gold*, LLC, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 198 (3rd Cir. 1990)). Here, a preliminary injunction would serve the public interest because, in the absence of injunctive relief, the public is at risk of being confused and deceived about the source and quality of 3M-branded products sold by Defendants. *See 3M Company*, 458 F. Supp. 3d at 198 ("[U]nless this Court enjoins Defendant's unlawful conduct, the public will continue suffering harm in the form of confusion and deception about the source and quality of the purported 3M-brand N95 respirators that Defendant is offering to sell for exorbitantly high prices."). Indeed, the record reflects that health-care facilities purchased some of the counterfeit masks sold by Defendants. As stated in another decision concerning counterfeit 3M masks, "the protection of healthcare professionals who are putting their lives on the line in the fight against COVID-19 is in the public interest. Those brave and selfless professionals deserve trustworthy supply lines of authentic PPE, including N95 respirators, that are free of misrepresentations [and] false designations of origin. . .." *Id*.

This Court agrees and finds that a preliminary injunction would serve the public interest here as well. 3M has satisfied the fourth requirement for a preliminary injunction.

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
13

## IV. CONCLUSION

For the foregoing reasons, 3M's request for a preliminary injunction is **GRANTED,** and **IT IS ORDERED THAT**:

Defendants, their agents, representatives, employees, assigns, officers, and all persons and entities in active concert and participation with them are, pursuant to Federal Rule of Civil Procedure 65(a), hereby preliminarily enjoined, during the pendency of this action from:

(i) Maintaining, disseminating, reproducing, promoting, distributing, advertising, or otherwise using any of the 3M Marks, or any mark confusingly similar thereto;

(ii) Using any of the 3M Marks, or any mark confusingly similar thereto, as all or part of any mark, product configuration, or design;

(iii) Concealing, destroying, transferring, selling, donating, or otherwise disposing of any evidence of Defendants' manufacture, marketing, sale, or receipt of things related to Defendants' sale of counterfeit 3M-brand products bearing the 3M Marks;

(iv) Using the 3M Marks and any other word, name, symbol, device, or combination thereof that is confusingly similar to the 3M Marks, for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any good or services, including, without limitation, Plaintiff's 3M-brand N95 masks; and

(v) Engaging in any false, misleading, and/or deceptive conduct in connection with 3M and its products, including, without limitation, representing itself as being an authorized distributor, vendor, agent, representative, retailer, and/or licensee of 3M and/or any of 3M's products, including, without limitation, 3M-brand N95 masks.

**IT IS SO ORDERED.**

Dated: May 14, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-02338-EJD
ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION
14